UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| Andrew Santiago, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 21-cv-499-MRD-LDA |
| ) | |
| Paul Chace; Centerline ) | |
| Communications, LLC, ) | |
| Defendants. ) | |

MEMORANDUM AND ORDER

Melissa R. DuBose, United States District Judge.

Plaintiff Andrew Santiago ("Santiago") filed this personal injury lawsuit against Defendants Paul Chace ("Chace") and Centerline Communications, LLC ("Centerline") (collectively, "Defendants"). Santiago's complaint arises out of a terrible high impact collision between his motorcycle and a Centerline-provided pickup truck operated at the time of the accident by Defendant Chace. Santiago timely filed this instant civil action in December of 2021, seeking compensation for the injuries and losses he sustained as a result of the collision. From Chace, he seeks redress under a theory of negligence and from Chace's employer, Centerline, he seeks redress under a theory of equity pursuant to the Massachusetts "permissive use of a motor vehicle statute." Before the Court is Centerline's motion for summary judgment and Santiago's motion to strike some of Centerline's exhibits. ECF Nos. 61, 78. For the reasons stated below, the Court GRANTS Centerline's motion for summary judgment and DENIES Santiago's motion to strike.

I.  BACKGROUND

Centerline hired Chace as a generator technician sometime in late February or early March of 2020.  ECF No.72-5 at 4, 11.  Generator technicians must travel to various worksites to install, maintain, and repair generators.  Centerline provides these employees with a vehicle and a fuel card.  *Id.* at 6.  Chace received a Ford F-250 from Centerline, which the Company rented from Enterprise at the height of the COVID-19 Pandemic.  ECF No. 72-7 at 33-34.  He retrieved the employer-provided vehicle from a colleague at a bus station and then reported to Enterprise to sign various documents.  ECF No.72-5 at 6-7.  In addition to the Centerline-provided vehicle, Chace received a company phone to access his schedule of customer visits, which was updated by Centerline at least weekly.  *Id.* at 5.  Chace was required to be onsite at varied worksites throughout New England and would occasionally need to cover worksites in Maryland, Virginia, West Virginia, and Delaware.  *Id.* at 8.

On Saturday, April 25, 2020, in Westport, Massachusetts, Chace was driving the company Ford F-250 outfitted with a V-nose trailer that he was using to haul a piece of heavy equipment for a friend who lived nearby.  *Id.* at 15-16.  In an unfortunate turn of events, Santiago was cruising along on his motorcycle just as Chace was turning left into his driveway, and the two collided.  *Id.* at 8.  Chace reported the collision that same day to Centerline via an application on the company provided cell phone.  The following Monday, he lamented to a supervisor that he used "bad judgment."  ECF No. 72-5 at 14; ECF No. 72-6 at 3.

Santiago alleges that he has incurred close to $200,000 in medical expenses and property damage because of the accident and filed this suit. ECF No. 1 ¶ 21.

Pursuant to Rule 56 of the FRCP, Centerline has filed a motion in this Court for summary judgment. Simply put, Centerline avers that it is not legally responsible for Chace's conduct when he operated the Ford F-250 on that fateful Saturday in April 2020. Chace, it argues, was not operating the F-250 in his capacity as a Centerline employee and, because he did not have permission from Centerline to drive the vehicle for personal use, it is not liable for his actions. ECF No. 61-1 at 1.

In support of its motion for summary judgment, Centerline has provided the Court with copies of its then-existing Company Vehicle Policy and its Employee Manual (collectively, the "Policies"). These Policies, they argue, establish that employees were prohibited from using company vehicles for personal use. ECF No. 61-1 at 7-8. In addition to these materials, they submitted documents from Paycom, a cloud-based payroll and human resources management service which maintained Centerline's employee onboarding dashboard, an internal human resources department onboarding document, and deposition transcripts from both a human resources employee and Chace's former direct supervisor.

In support of his opposition to summary judgment, Chace asks this Court to rely on the following: his deposition in which he testifies and maintains that he had no recollection of reviewing and affirming the Policies, the text of the Policies, and the same deposition transcript of the human resources employee. ECF Nos. 64, 65. Santiago urges this Court to discredit the evidence provided by Centerline and find

3

that, with respect to Centerline, there are genuine issues of material facts and summary judgment should be denied. ECF No. 68.

## II. STANDARD OF REVIEW

The Court grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*Id.* at 56(c)(1)(A). The moving party bears the burden of informing the Court for the basis of its motion and identifying the portions of the record which it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-250 (1986)). "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, with respect to each issue on which it has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir. 1997) (citing *Celotex Corp.*, 477 U.S. at 322-25). "Neither conclusory allegations nor improbable inferences are

sufficient to defeat summary judgment." *Carroll v. Xerox Corp.*, 294 F.3d 231, 236-37 (1st Cir. 2002) (cleaned up) (quoting *J. Geils Band Emp. Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1251 (1st Cir. 1996)). "The test is whether, as to each essential element, there is 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *DeNovellis*, 124 F.3d at 306 (quoting *Anderson*, 477 U.S. at 249-50).

Since the parties have invoked diversity jurisdiction, Massachusetts supplies the substantive rules of decision, and the Court applies Massachusetts law to all the state claims. *See Rodríguez v. Encompass Health Rehab. Hosp. of San Juan, Inc.*, 126 F.4th 773, 779 (1st Cir. 2025) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). While Santiago has not explicitly identified for the record the Massachusetts statute under which he seeks redress from Centerline, the Court assumes the relevant statute to be MASS. GEN. LAWS ch. 231, § 85A-B (2025).[1] The Massachusetts statute "shift[s] the burden to [a vehicle owner] to prove [a driver] was not his or her servant or agent in driving the car at the time of an accident." *Muni-Tech, Inc. v. Henry*, 2009 WL 3755065, at *1 (Mass. App. Div. 2009) (citing *Mitchell v. Hastings & Koch Enters., Inc.*, 38 Mass. App. Ct. 271, 276 (1995)). Under the statute, the driver's "actions may be imputed to [a vehicle owner] only if, at the time of the accident, [the

---

[1] The events of this accident occurred in Massachusetts and MASS. GEN. LAWS ch. 231, § 85A-B (2025) is the Massachusetts analog to R.I. GEN. LAWS § 31-33-6 (2024), which Centerline initially references in this motion. The parties jointly agreed to apply Massachusetts law at the summary judgment hearing held on March 19, 2025.

5

owner] had the authority and the means to control [the driver's] conduct." *Id.* at *2 (citing *Covell v. Olsen*, 65 Mass. App. Ct. 359, 363 (2006)).

The success of Centerline's motion for summary judgment hinges on whether it can demonstrate the absence of a genuine dispute as to the material fact that Chace knew he did not have Centerline's authority to operate the Ford F-250 on that unfortunate day in April 2020. In its motion, Centerline argues that its Company Vehicle Policy and its Employee Manual conspicuously informed all employees that off duty and personal use of company-provided vehicles was strictly forbidden and that Chace acknowledged that he knew of the Policies. ECF No. 61-1.

Centerline must defend its motion for summary judgment on two fronts. One being launched from the plaintiff Santiago and the other from its co-defendant Chace. The latter raises issues of ambiguity in the Policies. ECF No. 64-1. Santiago, on the other hand, opposes the motion on two fronts. First, he asserts that the Company implemented no procedure to ensure the Policies were adhered to, thereby stripping them of their legal enforceability. And second, he questions the validity of the documents Centerline provided to support its assertion that Chace did receive and acknowledge the Policies. ECF No. 69 at 7-8. We review these issues in turn, focusing first on the Policies and next on Chace's acknowledgement of them.

### A.  The Policies

The introductory paragraph of the Company Vehicle Policy states as follows:

> This policy has been prepared as an orientation on what is expected of you in the operation and maintenance of your company vehicle. Centerline Communications will provide you with safe, dependable transportation. In turn, you are entrusted to use good judgment and

6

>  have a complete understanding of the responsibilities involved, both of which are necessary to continue to drive a company-provided vehicle on company business. Any driver of a company vehicle . . . must meet the following requirements . . . [f]ollow the guidelines stated in this policy at all times.

ECF No. 61-5. The Employee Manual is provided to employees for the stated purpose of providing them with "information about working conditions, employee benefits, and some of the policies affecting employment at Centerline Communications, LLC, and its subsidiaries." ECF No. 61-7 at 6. It informs employees that they should "read, understand, and comply with all the provisions of this manual," as "[i]t describes many of [the] responsibilities [of] an employee and outlines the programs developed by Centerline Communications, LLC to benefit employees." *Id.* It goes on to state that the company reserves the right to revise, supplement, or rescind any policies or portions of the Employee Manual at its sole discretion. *Id.*

### 1. Ambiguities in the Policies

In his opposition to the summary judgment motion, Chace disputes that the Company Vehicle Policy and Employee Manual apply to his use of the Ford F-250 because Centerline did not own the vehicle outright and instead rented it from Enterprise Rent-A-Car. ECF No. 64-1 at 4-5. Chace argues that the Enterprise Rent-A-Car vehicle he was driving at the time of the accident does not fit within the meaning of the term "company owned vehicle" used in the Policy, noting specifically that the Scope of Use provision states that "Company-owned vehicles are to be used for company business only" and that "personal use of a company vehicle is prohibited." *Id.* at 6. Chace makes the same argument regarding language in the Employee

7

Manual, which states that "employees are expressly prohibited from using Company vehicles, Company property, and Company equipment or tools for personal use. Company vehicles are to be used exclusively for Company business." *Id.* at 7. Chace also argues that the attestation clause of the Company Vehicle Policy includes a reference to a "driver requirements policy," listed as Exhibit A, which he argues, did not exist. *Id.* at 6. In effect, Chace argues that these alleged discrepancies in the Company Vehicle Policy and the Employee Manual create an ambiguity about whether the Policies also applied to a non-company owned vehicle and subsequently, must be read in his favor. The record, Chace argues, also shows a disputed issue of fact as to what documents Chace reviewed and attested to as part of his employment with Centerline. *Id.* at 6-7.

When interpreting language in the context of a contract, the First Circuit has held that "summary judgment based upon the construction of contract language is appropriate only if the meaning of the language is clear, considering all the surrounding circumstances and undisputed evidence of intent, and there is no genuine issue as to the inferences which might reasonably be drawn from the language." *Rodriguez-Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 586 (1st Cir. 1993) (citing *Healy v. Rich Products Corp.*, 981 F.2d 68, 72 (2d Cir. 1992)).

"Under Massachusetts law, a personnel policy or similar document can constitute express or implied contract in certain contexts; for example, when an employee signs the policy, or when the policy is presented to the employee as a condition of employment." *Thornton v. Macy's Retail Holdings, Inc.* 594 F. Supp. 3d

8

271, 275 (D. Mass. 2022) (citing *Weber v. Cmty. Teamwork, Inc.*, 752 N.E.2d 700, 714 (Mass. 2001)). Massachusetts courts have also held that a policy term is ambiguous when "'reasonably intelligent persons would differ' as to the proper meaning of the term." *Performance Trans., Inc. v. General Star Indem. Co.*, 983 F.3d 20, 24 (1st Cir. 2020) (quoting *Dorchester Mut. Ins. Co. v. Krusell*, 150 N.E.3d 731, 738 (Mass. 2020)). More than a mere disagreement amongst the parties about the proper interpretation of a policy provision is necessary for an ambiguity to exist. *Id.* Instead, the policy language must be "susceptible to more than one rational interpretation." *Brazas Sporting Arms., Inc. v. Am. Empire Surplus Lines Ins. Co.*, 220 F.3d 1, 4-5 (1st Cir. 2000); *Valley Forge Ins. Co. v. Field*, 670 F.3d 93, 97 (1st Cir. 2012); *see Kiley v. Travelers Indem. Co. of R.I.*, 853 F. Supp. 6, 8, 11-12 (D. Mass. 1994) (holding that the words "as determined by the Company," which did not immediately follow the word "disability" in an ERISA insurance policy, did not create an ambiguity, as it was neither inconsistent on its face and did not allow for reasonable but differing interpretations).

  In this case, the Policies are clearly intended to cover any vehicle provided by Centerline to an employee for purposes of completing work obligations. This Court is not persuaded that Chace's assertion otherwise is a rational interpretation of the Company Vehicle Policy or that reasonable minds could differ on this point. The Company Vehicle Policy alone begins with references to a "company-provided vehicle." ECF 61-5 at 2. The fact that the terms "company vehicle" and "company-owned vehicle" are found later in the document does not create an ambiguity as to

9

the meaning of the general policy that employees are not to use employer-provided vehicles for personal use, nor does it invalidate the Policy's directive limiting the authorized use of vehicles. Additional support for the lack of ambiguity can be found in the Employee Manual's reference to cars "assigned" to employees. ECF No. 61-7 at 39. No reasonably intelligent person would believe that any policy which applies to company-owned vehicles would not apply to vehicles the company has rented for the same purposes, as in either case the vehicle is a means for the employee to complete the job responsibilities at hand. *See Performance Trans., Inc.*, 983 F.3d at 24. Furthermore, when reading the Policies conjunctively, there is no dispute Centerline clearly meant to include all vehicles it provided for employees to execute their duties, and Chace makes no argument as to why Centerline may have intentionally excluded rental vehicles from the Company Vehicle Policy prohibiting personal use.

Given such determination, there is not the slightest hint of ambiguity as to whether Centerline intended the Company Vehicle Policy to include rental vehicles. The Company Vehicle Policy itself states that its purpose is to orient employees as to "what is expected" in the "operation and maintenance of [their] company vehicle." ECF No. 61-5 at 2. It reads: "Centerline Communications will provide you with safe, dependable transportation. In turn, you are entrusted to use good judgment and have a complete understanding of the responsibilities involved, both of which are necessary to continue to drive a company-provided vehicle on company business." *Id.* The Employee Manual closes the loop, as it reads, "[t]ake care of vehicles assigned to you

10

as well as keys and other property . . ." ECF No. 61-7 at 39. So viewed, the Policies apply to any vehicle provided by Centerline to an employee for business purposes. The language does not allow for a differing interpretation and Chace does not provide a persuasive argument as to why he may have believed that his operation of the Ford F-250 was not bound by the Policies.

Moreover, Chace's contention that the attestation clause refers to a driver qualification policy which does not exist and in effect causes an ambiguity in his favor is also without merit. The Company Vehicle Policy itself states that Exhibit A is not created by the employer, but rather is the "current driver qualifications requirements of [their] insurance provider." ECF No. 61-5 at 2.

### 2. The Policies' Lack of Enforcement Mechanism

Santiago's contention that Centerline needed a policy specifically outlining how it would enforce the Company Vehicle Policy is unsupported. ECF No. 69 at 7. Centerline has retorted in its defense that Chace's immediate supervisor testified to enforcing the Policy. ECF No. 73 at 6. Regardless of the response from Centerline, the Court concludes that Santiago's assertion, while creative, is patently unworkable. Santiago seems to suggest that the law requires employers to have "policy enforcement rules" embedded within its official employment policies. That interpretation would then require yet another policy that would govern the enforcement of the enforcement policy. From this argument emerges a rabbit hole that this Court, finding no legal basis to support, is happy to swiftly navigate away from.

## B. Chace's Acknowledgement of the Policies

The Court now considers the parties' arguments regarding Chace's receipt and acknowledgement of the Policies.

In its motion for summary judgment, Centerline argues that Chace reviewed and acknowledged the Policies on March 9, 2020 through the company's then-used human resources and onboarding platform, Paycom. ECF Nos. 61-1 at 4; 73 at 2. In support of its contention, Centerline produced documentation provided by Paycom confirming Chace's acknowledgement of the Policy, along with a spreadsheet maintained by Centerline's department of human resources which also tracked Chace's onboarding progress. These documents noted his acknowledgement of the Policies, along with other relevant employment forms like his W-4 and direct deposit information. ECF No. 61. Because Centerline no longer uses the Paycom platform, during discovery it did not have access to the onboarding dashboard used during Chace's employment. ECF No. 72-3 at 5. Centerline, therefore, subpoenaed Paycom to provide evidence of Chace's acknowledgement and receipt of the Policies. In response, Santiago attempts to undermine the credibility of the Paycom documents Centerline both received and submitted. Santiago argues that the documents are unreliable because they do not possess metadata, were not provided in their native format, and were not properly authenticated, thus suggesting Centerline manipulated the documents. ECF No. 69 at 2, 7. Santiago also argues that Centerline failed to produce the documents in accordance with Fed. R. Evid. 901(a) for electronically stored information, taking specific issue with the use of a screenshot

of the Paycom dashboard used to show that Chace acknowledged the Policies. ECF No. 69 at 7. As previewed above, Chace's opposition merely claims he has no recollection of reviewing and affirming receipt of the Policies. ECF No. 64.

In the discovery phase of litigation, "a document request[ed] within the scope of [Fed. R. Civ. P.] 26(b) 'may specify the form or forms in which electronically stored information is to be produced.'" *Bobba v. Patel*, 2021 WL 1907460, at *3 (D. Mass. 2021) (quoting Fed. R. Civ. P. 34(b)(1)(C)).

> "If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and … [a] party need not produce the same electronically stored information in more than one form."

Fed. R. Civ. P. 34(b)(2)(E)(ii), (iii). The Rule 34 Advisory Committee Notes to the 2006 Amendment remark on metadata and "express concern that producing diverse types of electronically stored information in the same format would be costly, burdensome, and ultimately fruitless." *Dahl v. Bain Capital Partners, LLC*, 655 F. Supp. 2d 146, 149 (D. Mass. 2009). Furthermore, testimony of a witness with knowledge sufficiently authenticates evidence and a printout may constitute an original document for electronically stored information, so long as the printout is an accurate reflection of that information. *See* Fed. R. Evid. 901(a); Fed. R. Evid. 1001(d); *United States Bank Trust, N.A. v. Jones*, 925 F.3d 534, 540 (1st Cir. 2019).

Santiago's arguments, although spirited, fall flat. So far as the Court can determine from the record, at the time of discovery for this case, Centerline no longer had access to the Paycom dashboard and provided documents in the exact format

13

Paycom provided them in the absence of an instruction from Santiago to do otherwise. ECF No. 73 at 2. The Court further notes that there is no indication on the record that Santiago tried to either depose or subpoena Paycom for documents directly when he was skeptical of the format of the documents Centerline produced. The spreadsheet Centerline's human resources department maintained, which tracked Chace's onboarding progress, was also provided by Centerline as it existed in the ordinary course of business. *Id.* at 7. In both cases, Centerline produced the documents in a usable form as required by the rules. By the same token, so far as this Court can tell from the record, Santiago provided no request or instruction to Centerline to produce documents with metadata. *See Wai Feng Trading Co. Ltd. v. Quick Fitting, Inc.*, 2019 WL 118412, at *11 n.24 (D.R.I. 2019) (refusing to order a second production of most already-produced electronically stored material where the requesting party failed to specify a format for production in its document requests).

Next, Santiago's reliance on *Carmona v. Toledo*, 215 F.3d 124 (1st Cir. 2000), to suggest that Rule 56 requires that documents submitted with a summary judgment motion must be authenticated by and attached to an affidavit is also misguided.[2] ECF No. 78 at 7; ECF No. 90 at 5. *Carmona* "was decided prior to a 2010 amendment to Rule 56, which now requires a party asserting a fact to support it by citing to particular parts of materials in the record, such as depositions." *Nasir v. Town of*

---

[2] Santiago also has a pending Motion to Strike Defendant Exhibits before this Court, in which he argues that Centerline has not produced any documents that are authenticated in any manner to support its motion for summary judgment. ECF No. 78.

*Foxborough*, 2022 WL 375300, at *2 (D. Mass. 2022) (internal citations omitted). Here, Centerline proffered depositions of a longstanding human resources employee and Chace's supervisor to authenticate the Paycom document, the Policies, and the human resources tracking sheet it produced as supporting evidence for this motion, all squarely in line with Rule 56 and FRE 901(1).

Chace maintains his position that he does not recall reviewing and acknowledging the Policies with his deposition testimony, in which he testified as such. However, the Court does not find that evidence weighty enough to sufficiently raise an issue of a genuine factual dispute. First Circuit precedent instructs that a nonmovant in a summary judgment motion may not "rest upon the mere allegations or denials of the adverse party's pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." *Mattoon v. City of Pittsfield*, 980 F.2d 1, 7 (1st Cir. 1992). Here, Chace merely asserts that he does not recall receiving the Policies. But, even if Chace can show that he does not remember, he still fails to provide competent evidence to rebut the notion that he did review and acknowledge the Policies in question, which Centerline has supported through testimony, documents, and Chace's own acquiescence to the procedures of the Policies. This Court has held that "evidence that is merely colorable or is not significantly probative cannot deter summary judgment." *Lyons v. Wall*, 464 F. Supp. 2d 79, 82 (D.R.I. 2006) (citing *Anderson*, 477 U.S. at 256-257). Chace's lack of memory by itself is insufficient to create a genuine issue of material fact. He provides no evidence to dispute the record in which Centerline demonstrates that Chace did indeed receive the Policies

15

and was in fact aware of their consequences. *See Peterson v. C.R. Bard, Inc.*, 654 Fed. Appx. 667, 670 (5th Cir. 2016) (finding that the non-movant did not carry her burden to offer evidence that creates a genuine issue of material fact when she provided no evidence to dispute a doctor's testimony that she was warned about IVC filter problems other than her lack of memory of the conversation) (citing *Hemphill v. State Farm Mut. Auto Ins. Co.*, 805 F.3d 535, 541 (5th Cir. 2015)).

Santiago's and Chace's opposition to Centerline's motion for summary judgment are further handicapped by the legal doctrine in Massachusetts which allows for incorporation of personnel policies and manuals into employment agreements. *Jackson v. Action for Boston Cmty. Dev., Inc.*, 525 N.E.2d 411, 415 (Mass. 1988). Although there are no specific requirements for determining whether an employment policy or manual is an enforceable contract, there are several factors that suggest the existence of a contract. *Warren v. Children's Hospital Corp.*, 652 F. Supp. 3d 135, 143 (D. Mass. 2023). "These [factors] include negotiation between the employee and the employer about the policy's terms, the employer calling 'special attention' to the policy, and the employee manifesting assent to the policy.'" *Id.* (quoting *Pearson v. John Hancock Mut. Life Ins. Co.*, 979 F.2d 254, 256 (1st Cir. 1992)). "Factors pointing in the opposite direction include the employer reserving the right to unilaterally modify the policy and a characterization that the policy is meant to provide 'guidance' rather than commit the employer to certain conduct." *Id.* at 143-44 (quoting *Pearson*, 979 F.2d at 256). The overarching questions are whether the employee believed that the policy "constituted the terms or conditions of employment,

16

equally binding on employee and employer" and whether such belief was "reasonable under the circumstances." *Derrig v. Wal-Mart Stores, Inc.*, 942 F. Supp. 49, 55 (D. Mass. 1996). In *Jackson*, the Court explained that "the defendant's adherence to the grievance procedures is some evidence of the existence of a contract based on the personnel manual's terms" and further noted that if an employee remains employed after receiving a manual, that fact alone can "supply the necessary consideration to incorporate the manual's terms in an employment contract." 525 N.E.2d at 415. "The terms of an employment agreement must be deduced, construed, and enforced as written. In the course of that endeavor, courts may not single out an isolated word or phrase at the expense of the language as a whole." *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 7 (1st Cir. 2003).

Based on the record, this Court does not find that Chace has demonstrated a genuine dispute of material fact about whether he is bound by these Policies because of his mere lack of recollection. The Court notes from the record that Chace never suggested that he does not recall reviewing and signing his W-4 and direct deposit forms, which were accessed via the same platform. Furthermore, Chace expressed knowledge of the policy when he abided by its procedure for reporting vehicle accidents on his off day and admitted to using poor "judgment," language explicitly stated in the Policies. ECF No. 72-6 at 3.

Further, when considering whether the Policies have been incorporated into Chace's employment contract, it is undisputed that Chace remained an employee after receiving the Policies. *See Jackson*, 525 N.E.2d at 415. The *Jackson* factor

17

analysis also tips the scale toward Centerline in favor of concluding there is no dispute that the Policies were indeed incorporated into Chace's employment agreement, *see id.*: 1) Centerline had the authority to "change, modify, or cancel the contents" of its policies, ECF No. 61-5 at 4; 2) the Policies indicate that the failure of employees to commit to the conduct "could result in disciplinary action, up to and including termination of employment," ECF 61-5 at 2; *see also* ECF 61-7 at 28; 3) the record does not suggest that Chace negotiated the terms of the Policies; and 4) Centerline required receipt and acknowledgement of the Policies as part of each employee's onboarding process.  Therefore, there is no dispute that Chace was on notice of the Policies and the potential consequences of breaching them.

To survive summary judgment "a plaintiff is not required to rely only on uncontradicted evidence." *Calero-Cerezo*, 355 F.3d at 19.  Though, "at the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party," that is true "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting Fed. R. Civ. P. 56(c)); *Intel Corp. Inv. Policy Comm. v. Sulyma*, 589 U.S. 178, 189 (2020) (citing *Scott*, 550 U.S. at 380).  If a plaintiff's denial of knowledge is "blatantly contradicted by the record . . . a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

### III.  CONCLUSION

For the reasons stated above, this Court finds no genuine dispute as to the material facts of this case and determines that Centerline is entitled to judgment as

a matter of law. Chace has not demonstrated that a trier of fact could reasonably find in his favor because all he proffers in his defense is his inability to recall whether he received and reviewed the Policies. Whether or not Chace can recall is not dispositive of whether he did in fact review the Policies and nothing in the record bolsters his position to the extent that a reasonable fact finder would rule in his favor. Chace operated the Ford F-250 provided by his employer for personal purposes in violation of Centerline's Policies, which he had reviewed and acknowledged, and which were incorporated into his employment agreement. As a result, Centerline is entitled to judgment as a matter of law. *See* MASS. GEN. LAWS ch. 231, § 85A-B; *see also Cheek v. Econo-Rental System, Inc.*, 473 N.E.2d 659, 662 (Mass.1985) (noting that negligence of a driver "was imputable to the defendant only if at the time of the accident the relationship of the defendant and [driver] was that of master and servant") (citing *Konick v. Berke, Moore Co.*, 245 N.E.2d 750, 751 (Mass. 1969)).

This Court hereby GRANTS defendant Centerline's motion for Summary Judgment and DENIES plaintiff's Motion to Strike.

IT IS SO ORDERED.

_____
Melissa R. DuBose
United States District Judge

May 7, 2025